Citation Nr: 1542431 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 13-12 756 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin



THE ISSUE

Entitlement to service connection for erectile dysfunction, to include as secondary to the service-connected diabetes mellitus.



REPRESENTATION

Appellant represented by: Wisconsin Department of Veterans Affairs



ATTORNEY FOR THE BOARD

J. Smith, Counsel



INTRODUCTION

The Veteran served on active duty from July 1969 to July 1971.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a July 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin.

In October 2013, the Board remanded the claim for further development.

The matter was last before the Board in April 2015. The Board remanded the claim for an addendum medical opinion, which was obtained in May 2015. Thus, there was substantial compliance with the remand. Stegall v. West, 11 Vet. App. 268 (1998); see also Dyment v. West, 13 Vet. App. 141, 147 (1999) (requiring substantial compliance with Board remand directives).

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future review of this case must consider these electronic records.

The issue of entitlement to special monthly compensation for the loss of use of a creative organ has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). See Virtual VA Entry September 4, 2015. Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).



FINDING OF FACT

The Veteran's erectile dysfunction is not attributable to service and was not caused or aggravated by the service-connected diabetes mellitus.


CONCLUSION OF LAW

The criteria for entitlement to service connection for erectile dysfunction have not been met. 38 U.S.C.A. §§ 1110 , 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102 , 3.303, 3.304, 3.310 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Notice and Assistance

VA has satisfied its duties under The Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2015).

A January 2011 letter notified the Veteran of the elements of service connection and informed him of his and VA's respective responsibilities for obtaining relevant records and other evidence in support of his claim. The duty to notify is satisfied. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484 (2006); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

VA's duty to assist under the VCAA includes helping claimants to obtain service treatment records (STRs) and other pertinent records, including private medical records (PMRs). See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). The claims file contains the Veteran's STRs, PMRs, and VA medical records (VAMRs). The duty to obtain relevant records is therefore satisfied. See 38 C.F.R. § 3.159(c).

VA's duty to assist also includes providing a medical examination and/or obtaining a medical opinion when necessary to make a decision on the claim, as defined by law. 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a) (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006). Appropriate VA medical inquiries have been accomplished and are factually informed, medically competent and responsive to the issue under consideration. Monzingo v Shinseki, 26 Vet. App. 97 (2012); Barr v. Nicholson, 21 Vet. App. 303 (2007).

In sum, the Veteran has been afforded a meaningful opportunity to participate in the development of his appeal. He has not identified any outstanding evidence which could support his claim, and there is no evidence of any VA error in notifying or assisting the Veteran that could result in prejudice to him or that could otherwise affect the essential fairness of the adjudication. Accordingly, the Board will proceed to the merits of the claim.

Analysis

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a). Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In addition, service connection is warranted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Such secondary service connection is also warranted for any increase in severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(b). This latter provision was added as part of an amendment intended conform VA regulations to Allen v. Brown, 7 Vet. App. 439 (1995), and also limited the circumstances in which VA would allow aggravation. See 71 Fed. Reg. 52,744 (Sept. 7, 2006) (codified at 38 C.F.R. § 3.310(b)). 

The current records, including a VA examination report of May 2015, establish a diagnosis of erectile dysfunction.

The STRs are devoid of any pertinent complaints or treatment relating to erectile dysfunction, and the Veteran's separation documents show no abnormalities in this regard. Indeed, the Veteran does not contend the condition arose in service; rather, he claims it is secondary to his service-connected diabetes mellitus. See, e.g., January 2011 claim (VBMS Entry January 12, 2011), February 2011 letter (VBMS Entry February 24, 2011). 

On the matter of nexus, the record contains a number of opinions. On VA examination for diabetes in April 2011, the Veteran reported that he had been unable to achieve an erection for three to four years. He had not tried any medication for the condition and had not been sexually active for several years. His testosterone level was normal in February 2011. The examiner noted that the record showed the diagnosis of diabetes occurred in May 2010. The examiner opined, "erectile dysfunction per veteran report preexisted diagnosis of diabetes by several years. He has not been sexually active therefore there is no clinical way to determine if diabetes aggravated the condition or if any progression was normal and expected within [sic] a 60 year old male." VBMS Entry April 27, 2011.

In October 2013, the Board remanded the claim for an addendum opinion, noting that although the Veteran had been diagnosed with diabetes mellitus in May 2010, the diagnosis was rendered after approximately 5 years of intermittent hyperglycemia. The Board requested an opinion as to whether the Veteran's erectile dysfunction was caused or aggravated by the diabetes mellitus.

Also in October 2013, the Veteran submitted the private medical report of Dr. K. Dr. K. opined, "I believe his erectile dysfunction is most likely a result of his diabetes and his hyperlipidemia which would cause vascular disease. Please see my enclosed progress note regarding this. Although erectile dysfunction is usually multifactorial, I think it is most likely due to his diabetes in this case." In the attached progress note, Dr. K. stated that the Veteran was hesitant to take medications but wanted to discuss his erectile dysfunction. He was not having morning erections and did not get erections during sexual activity anymore. He had a history of diabetes and hyperlipidemia. The erectile dysfunction had been going on for at least a few years, and the Veteran was not sexually active with his wife. Dr. K. conducted a physical examination, and concluded, "I feel this [is] most likely due to his diabetes and hyperlipidemia with microvascular disease." VBMS Entry October 29, 2013.

In a November 2013 medical opinion, the examiner reviewed the Veteran's laboratory test results. Blood sugar levels in 2004, 2005, and 2006 were found "normal to minimally elevated," thus, the examiner found the Veteran did not have five years of elevated glucose readings prior to his diagnosis of diabetes. Rather, it was not until 2009 that his blood glucose was at a diagnostic level, which the examiner found disputed the theory of diabetes influencing erectile dysfunction. The examiner concluded, "given the above information obtained with review of
clinical records and clinical references, ED for this veteran as likely as not existed prior to diagnosis of Diabetes, is related to several factors (age, lack of sexual activity and obesity) and not aggravated beyond normal progression by Diabetes." Virtual VA Entry November 20, 2013. 

In a November 2013 addendum opinion written by a different examiner, the examiner opined, "it is LESS LIKELY THAN NOT that the Veteran's erectile dysfunction (ED) incurred, was caused by, and/or aggravated by beyond its normal aging process by his time in military service and/or a nexus to his diabetes mellitus (DM)." (emphasis in original). As rationale, the examiner noted that the STRs did not document erectile dysfunction. As for secondary service connection the examiner noted, the "clinical file clearly demonstrated ED 5 years prior to his diagnosis of DM and/or hyperglycemia." Additionally, the examiner noted that the Veteran's medical records lacked "clinical evidence to support diminished microvascular complications of DM," and that the condition was at least as likely as not related to aging. VBMS Entry November 26, 2013.

 In April 2015, the Board again remanded the matter for an addendum medical opinion, noting that the Veteran had been diagnosed with hyperglycemia in approximately May 2006, elevated glucose in 2008, and diabetes in May 2010. The onset of erectile dysfunction appeared to be approximately 2008. The Board sought an opinion addressing this evidence.

In a May 2015 VA medical opinion, the examiner cited medical literature explaining that diabetes is diagnosed by the following criteria: fasting plasma glucose (FPG) = 126 mg/dl (7.0 mmol/l); or, symptoms (such as polyuria, polydipsia, unexplained weight loss) and a random plasma glucose = 200 mg/dl (11.1 mmol/l); or plasma glucose = 200 mg/dl ( 11.1 mmol/l) 2 hours after a 75g glucose load; or A1C = 6.5%. The examiner stated that a diagnosis of diabetes needs to be confirmed by repeating the same blood sugar test or doing a different test on another day.

The examiner opined that a diagnosis of diabetes in the Veteran "was clearly not met prior to 2010." She noted that the record showed that the onset of erectile dysfunction was approximately 2007-2008, and further stated, "diabetes did not meet diagnostic criteria until years later nor were blood sugars suggestive of Diabetes in 2007 - 2008; Additionally to have caused the ED blood sugars would have needed to be elevated for years prior ie 2003-2005 - data above does not support that conclusion." She opined that she could not determine whether diabetes aggravated the preexisting erectile dysfunction, "an already absolute condition," without resort to speculation. She further concluded that there was no evidence to support that the Veteran had erectile dysfunction while on active duty.

The preponderance of the evidence is against the claim. On the matter of direct service connection, the November 2013 and May 2015 VA examiners offered negative nexus opinions, and there is no evidence to the contrary, including lay evidence. These reports are adequate for the purposes of adjudication. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). 

On the matter of secondary service connection, the October 2013 private medical opinion of Dr. K. is of diminished probative value as Dr. K. did not provide any discussion concerning the onset of the Veteran's diabetes versus his erectile dysfunction. Also, while first noting that the etiology of erectile dysfunction is usually "multifactorial," he failed to provide an adequate rationale as to why the Veteran's diabetes was likely the cause. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (holding most of the probative value from medical opinions come from their reasoning.) By contrast, the opinions of the VA examiners, particularly the May 2015 examiner, include a rationale for the negative opinions on causation and aggravation based on the chronology of the Veteran's medical disorders. Stefl, 21 Vet. App. at 123. Other etiologies for the disorder, including aging and obesity, were found. The examiners based their opinions on a review of the claims file, as well as reference to medical literature. 

The Board has considered the Veteran's own assertions that he has erectile dysfunction that is related to diabetes. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the etiology of erectile dysfunction falls outside the realm of common knowledge of a lay person, and has been noted by the medical professionals to be "multifactorial." While the Veteran can competently report symptoms, an opinion on the etiology requires medical expertise to determine. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The VA examiners are medical professionals who reviewed the claims file and considered the reported history including these lay assertions. The examiners used their expertise in reviewing the facts of this case and determined that the current erectile dysfunction was not caused or aggravated by the service-connected diabetes. The opinions of the VA examiners are more probative. 

To the extent the Veteran has recently suggested that he had diabetes prior to the established date of diagnosis (May 2010), he is not competent to diagnose the disease as this requires medical interpretation of laboratory testing. See VBMS Entry December 11, 2013; see Jandreau, 492 F.3d at 1376-77. While he may competently assert that he was told by unspecified medical professionals that he had diabetes prior to the established date of diagnosis, these medical professionals have not submitted statements in this regard and the rationale for any such finding is unknown. The Board finds the current medical evidence more probative and more credible.

To the extent the Veteran has also recently suggested that his erectile dysfunction did not exist prior to his diabetes, while he is competent to describe his symptoms, these assertions are inconsistent with prior statements. VBMS Entry December 11, 2013. For example, in an appointment with a primary care provider in February 2011, the Veteran reported that he was not waking up with erections, and had not had erections for 2-3 years. VBMS Entry July 21, 2011, p. 16/21. In an April 2011 treatment record, the provider documented the Veteran's report that he had not had an erection in two years, and noted, "impotence of organic origin." Id. at 10/21. The Veteran's recent statements concerning the onset of his erectile dysfunction are not credible. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care).

As the preponderance of the evidence is against the Veteran's claim, the doctrine of reasonable doubt is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for erectile dysfunction is denied.




____________________________________________
VITO A. CLEMENTI
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs